IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AHMAD JEBRIL | § | |
|     FED. REG. I.D. 31943-039 | § | |
| v. | § | C.A. NO. C-07-436 |
| | § | |
| DAN JOSLIN, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**
**TO DISMISS CERTAIN CLAIMS AND RETAIN CASE**

This is a civil rights action filed by a federal prisoner pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 398 (1971).

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, plaintiff's retaliation claims against defendants as well as his First Amendment claim against Warden Dan Joslin, and shall be retained on this Court's docket. However, plaintiff's remaining claims against defendants for failure to state a claim upon which relief can be granted are dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      Jurisdiction.**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.[1]

**II.     Procedural Background And Plaintiff's Allegations.**

Plaintiff is a federal prisoner in the custody of the Bureau of Prisons ("BOP"), and is currently incarcerated at the Federal Correctional Institution ("FCI") in Three Rivers, Texas. He filed this action on November 8, 2007, on a § 2241 habeas corpus form, yet raising civil rights claims against prison officials at FCI-Three Rivers, and at FCI-Milan in Michigan. (D.E. 1). On November 19, 2007, plaintiff filed his first amended complaint with exhibits. (D.E. 8).

A hearing was held on December 13, 2007, at which plaintiff agreed that the nature of his claims were characterized properly as § 1983, not habeas corpus. Plaintiff was granted leave to file a second amended complaint. (D.E. 15, 17). By order entered January 4, 2008, plaintiff's claims against the FCI-Milan defendants were severed and transferred to the United States District Court for the Eastern District of Michigan, Southern Division. (D.E.19).

A Spears[2] hearing was conducted on January 9, 2008. The following allegations were made in plaintiff's pleadings, (D.E. 1, 8, 15), or at the hearing.

Plaintiff is Muslim and a serious student of the Quran. He attended the Islamic University of Madinah (Medina) in Saudi Arabia, and has memorized the Quran. He is serving a

---

[1] Upon consent of the plaintiff, (D.E. 20), this case was referred to the undersigned magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 21); see also 28 U.S.C. § 636(c).

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

100-month sentence for fraud and jury tampering.  His father is serving a sentence for fraud stemming from the same indictment.

Plaintiff entered FCI-Milan in November 2004, along with his father.  Sometime in 2006, the head chaplain at FCI-Milan, Mukhtar Curtis, introduced a book called <u>Milestones</u>, by Sayyid Qutub, to the Muslim inmates.  Plaintiff objected to the book, believing it to be a "spiritual manifesto of terrorists."

On  December 11, 2006, plaintiff and his father were escorted to the Special Housing Unit ("SHU").  Prison officials would not tell him why he was being placed in the SHU, but only that he was under investigation.  Plaintiff believes that the investigation was due to his having discussed the radical form of Islam with Chaplain Curtis when he raised objections to <u>Milestones</u>.

Plaintiff remained in the FCI-Milan SHU for eight months.  He stayed briefly in Phoenix, and on August 14, 2007, arrived at FCI-Three Rivers.  Moments after his arrival, he was told that he would be placed in SHU, but to wait outside of the Lieutenant's office.  He waited in the hot sun from 7:30 a.m. to 10:30 a.m, and was then dismissed to a unit, as opposed to being placed in the SHU.

Within two weeks of his arrival, all of the correctional officers knew plaintiff by name.  One officer told him that, prior to his arrival, officials had sent a memorandum with his picture to staff advising them that he was a Muslim extremist with ties to Osama Bin Laden.

Plaintiff claims that, as a result of being labeled a terrorist, he is constantly bullied and harassed by prison staff.  He is often searched twice a day, must go through a metal detector, and

is routinely singled out for alcohol testing. When he teaches the other Muslims, he is monitored by five cameras. His mail is often not sent out.

On August 25, 2007, a Muslim inmate told plaintiff that he had been advised by another inmate to stay away from him because he was a terrorist.

On August 26, 2007, a lieutenant stopped and searched plaintiff. The searching officer found three pages from the internet, and he asked plaintiff how he had access to the internet. Plaintiff explained that he had been in Chaplain Noble's office and that she had printed the material for him. He complains that he is the subject of random searches much more frequently than other inmates.

On August 27, 2007, plaintiff spoke to Captain Higgerson about the staff harassment. Captain Higgerson admitted that he had told the staff to watch plaintiff closely and to keep an eye on his activities, but not to the point of harassment.

On August 30, 2007, Officer Jennister followed plaintiff into the chow hall and began questioning him about why his pants were cuffed. Plaintiff explained that it was forbidden for a Muslim man to let any garment he wears hang down beneath his ankles. Officer Jennister told him there was no exception in the BOP regulations to allow him to wear his pants cuffed. Plaintiff went to Warden Joslin for assistance. At the same time, Officer Jennister came into Warden Joslin's office with the BOP regulations attempting to prove his point. Warden Joslin ordered plaintiff to uncuff his pants. He again protested that doing so would violate his religious beliefs, but ultimately complied. Plaintiff also testified that other non-Muslim inmates periodically wore their pants cuffed without repercussion.

On August 31, 2007, plaintiff sent Warden Joslin a letter detailing the harassment by staff. (D.E. 8, Ex. 3). In addition to the above incidents, plaintiff claims that officers will ask other inmates about his activities, causing the inmates to become suspicious of him. Id. at 3.

In late December 2007, the seven other Muslims at FCI-Three Rivers asked plaintiff to be their spiritual leader. He accepted; however, he was then notified that he was not allowed to accept the position.

Plaintiff claims that Warden Joslin and Captain Higgerson have interfered with his First Amendment right to practice his religion by ordering staff to harass him. He claims that defendants have failed to protect him from the harassment by staff, in deliberate indifference to his health and safety.[3] He asserts that defendants are effectively retaliating against him for practicing his religion as evidenced by their increased scrutiny of his activities, and that this scrutiny also amounts to a violation of the Equal Protection Clause.

Plaintiff asserts that he is a non-violent prisoner with no gang affiliation, and that he should be at a camp, not a medium security prison. He seeks a transfer off FCI-Three Rivers to a low security prison or camp near his home in Michigan. He claims that both Warden Joslin and Captain Higgerson have the authority to order such a transfer.

---

[3] In his original complaint, plaintiff alleged that the FCI-Milan defendants classified him as a high security risk after he and the chaplain disagreed about the Milestones book. He claims that the decision to classify him as a high security risk violated his due process rights and amounts to cruel and unusual punishment. Those claims are not before this Court.

**III.    Analysis Of Plaintiff's Claims.**

    **A.    Legal Standard.**

It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

    **B.    Plaintiff's Bivens Claims.**

In his first amended complaint, plaintiff claims that he is bringing Bivens action against Dan Joslin and Captain Higgerson.  A Bivens action is the federal counterpart to a § 1983 action and "extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983." Abate v. Southern Pac. Transp. Co., 993 F.2d 107, 110 n.14 (5th Cir. 1990).  In Bivens, the Supreme Court "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980).  The Fifth Circuit has explained that "a Bivens claim is available only against government officers in their individual capacities." Enplanar, Inc. v. Marsh, 11 F.3d 1284, 1294 n.12 (5th Cir. 1994).  In

addition, Bivens limits recovery to intentional deprivations by the federal officer. Williamson v. U.S. Dep't of Agric., 815 F.2d 368, 381 (5th Cir. 1987).

Plaintiff seeks to sue defendants in their individual and official capacities. However, a Bivens action is not available to claims against federal officers in their official capacities. See Enplanar, 11 F.3d at 1294 n.12. A suit against a federal officer in his official capacity is a suit against the United States, and is barred by sovereign immunity.[4] Plaintiff's claims against defendants in their official capacities are DISMISSED.

### C. Plaintiff's First Amendment Claims.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I. The Supreme Court has held that prisoners retain their first amendment rights, including the right to free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, that right may be limited by legitimate penological objectives. Id.; Cruz v. Beto, 405 U.S. 319, 322, n.2 (1972) (per curiam); Hicks v. Garner, 69 F.3d 22, 25 (5th Cir. 1995). "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In Turner v. Safley, the Supreme Court set forth four factors a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest: (1) whether the regulation has a logical connection to the legitimate government

---

[4] The Federal Tort Claims Act, 28 U.S.C. § 1346 and § 2671, *et seq.*, waives the sovereign immunity of the United States for certain torts committed by federal employees. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Plaintiff has not alleged any FTCA claims.

interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests.  482 U.S. at 89-91; see also Chriceol v. Phillips, 169 F.3d 313, 316 (5th Cir. 1999) (per curiam) (citation omitted).

In this case, plaintiff claims that his right to practice his religion has, effectively, been impinged upon due to the constant harassment he faces by correctional officers.  He complains that he has been labeled a terrorist, repeatedly subjected to random searches and alcohol testing, ordered to uncuff his pants in violation of his faith, and made to feel that he is under constant scrutiny.  He complains that Warden Joslin and Captain Higgerson ordered and authorized their subordinates to harass him, in violation of his right to practice his religion.

### 1. Heightened Attention and Scrutiny of Plaintiff.

The Fifth Circuit has explained that "'supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.'"  Thompson v. Upshur County, Tex., 245 F.3d 447, 459 (5th Cir. 2001) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987)). "[Section] 1983 does not give a cause of action based on the conduct of subordinates.  Personal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citations omitted).  Here, plaintiff has alleged sufficient facts of personal involvement against the defendants.  He claims that only Warden Joslin or Captain Thompson could have sent out the memorandum with his picture advising staff that he is a terrorist.  In addition, Captain Higgerson admitted that he had ordered the staff to keep a close

eye on plaintiff. Plaintiff sent a detailed letter to Warden Joslin listing the ways in which he was being harassed by staff, (D.E. 8, Ex. 3), but Warden Joslin did not respond to the letter, nor did any other officer.

Despite establishing personal involvement, however, plaintiff fails to demonstrate that either defendant was attempting to violate plaintiff's right to practice his religion. Indeed, plaintiff met with other Muslims on a regular basis, was given access to the Muslim materials in the prison library, and was allowed to practice the essential tenets of his faith. Although he was under increased scrutiny because he was classified as a terrorist, he admits that neither Warden Joslin nor Captain Higgerson had a role in that classification decision. Defendants reasonably relied on the classification decisions made at FCI-Milan.

Moreover, even if plaintiff could show that his classification status was in error, he still fails to state a constitutional violation because, in general, inmates do not have a protected property or liberty interest in their custodial classifications. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (citation omitted); Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir. 1988) (citation omitted). The Constitution "does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkerson v. Austin, 545 U.S. 209, 221-22 (2005); see also Meachum v. Fano, 427 U.S. 215, 225 (1976) (no liberty interest arising from due process clause itself in transfer from low to maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").

A liberty interest arises, if at all, from state policies or law, subject to the limitations set forth in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court held that the due

9

process clause does not protect every change in the conditions of confinement having a substantial adverse effect upon a state prisoner, but only those that impose an atypical and significant hardship in relation to the ordinary incident of prison life. In general, those conditions are ones that affect the quantity of time, rather than the quality of time, served by a prisoner. Id, at 484.

The BOP may direct confinement of a prisoner in any available facility and may transfer a prisoner from one facility to another at any time. See 18 U.S.C. § 3621(b). Federal prisoners generally have no right to placement in a particular penal institution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moore v. U.S. Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam).

Moreover, the classification of inmates is a matter within the discretion of prison officials. McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). Thus, absent an abuse of discretion, a federal court may not interfere with administrative determinations regarding custodial classifications of inmates. Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998). The federal courts do not supervise the day-to-day administration of prisons. Meachum, 427 U.S. at 228-29.

Plaintiff has no constitutional right to be incarcerated in any particular prison. Because of his higher security classification, he is subjected to more scrutiny. This is a legitimate penological goal, and does not unnecessarily interfere with plaintiff's right to practice his faith. Thus, to the extent plaintiff claims that defendants interfered with his right to practice his religion by labeling him a terrorist, subjecting him to random searches and alcohol testing, and

10

constantly scrutinizing his activities, those claims are dismissed with prejudice for failure to state a claim.

### 2.     Defendant Joslin's Order for Plaintiff to Uncuff His Pants.

Plaintiff was wearing the cuffs of his pants rolled up based on a tenet of his faith. During an encounter with Warden Joslin, he ordered plaintiff to uncuff his pants. Plaintiff attempted to explain that such an action would violate his religious beliefs. Despite his explanation, Warden Joslin still ordered him to uncuff his pants. Because of this order, plaintiff uncuffed his pants.

The basis for the order was a BOP regulation requiring that all inmates wear their pants uncuffed. Whether this regulation presents a valid penological interest and is reasonable in light of the facts of this case is better addressed after further development of the issues presented herein. Accordingly, plaintiff's First Amendment claim against defendant Joslin is retained on this Court's docket.

### D.     Plaintiff's Eighth Amendment Claims.

Plaintiff alleges that his life is in danger at FCI-Three Rivers and that the staff harasses him in violation of his right to be free from cruel and unusual punishment.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). They are deliberately indifferent to an inmate's safety if they know that an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

Similarly, prison officials have a duty to protect prisoners from attacks by correctional officers. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

In this case, plaintiff fails to show that he is at risk of *serious* harm as a result of being labeled a terrorist. Although he complains about numerous incidents of inconvenience, *i.e.*, waiting in the sun for three hours, frequent body searches, testing for alcohol, and in general, a disrespectful and rude attitude from many of the guards, these are not the types of behaviors that rise to the level of constitutional violations, and as such, cannot support an Eighth Amendment claim. He has not been assaulted or injured by a guard or fellow prisoner. Moreover, he has not alleged any facts to support that there is the likelihood of such assault in the future. He has not suffered a serious medical condition as the result of any harassment tactic employed by an officer. Plaintiff's failure to protect claims are without merit, and are DISMISSED.

**E.    Plaintiff's Retaliation Claims.**

Plaintiff claims that defendants have retaliated against him for practicing his Muslim faith by ordering the staff to harass him and/or to let the staff continue to harass him.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). The Fifth Circuit has explained that an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising such constitutional rights. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Id. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Here, plaintiff claims that, based on information from FCI-Milan about his religious beliefs and practices, defendants were suspicious of his actions upon his arrival to FCI-Three Rivers. He claims that, but for his religious practices, defendants would not have ordered the harassment or allowed it to continue. Plaintiff thus demonstrates the necessary "but for" causation essential to a retaliation claim. The fact that the actions complained of are not, in and of themselves, a constitutional violation does not defeat his retaliation claim. See Woods, 60 F.3d at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted). As plaintiff has adequately stated a claim of retaliation against defendants, this claim is retained on the Court's docket.

### F.     Equal Protection Clause.

In his final claim, plaintiff argues that defendants failed to treat him equally because they subjected him to higher scrutiny than other prisoners.

The Equal Protection Clause of the Fourteenth Amendment provides "that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). The Fifth Circuit has further explained that "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999) (quoting Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989)).

A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination. Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995) (per curiam); see also United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992) (per curiam) ("Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.") (citation omitted). Vague and conclusory allegations are insufficient to raise an equal protection claim. See Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (per curiam).

Plaintiff alleges that defendants treated him differently than other inmates because of his religion, requiring that the guards single him out for searches, alcohol testing, and to harass him about his Muslim faith. However, he does not suggest that non-Muslims were treated differently based on their religion. Instead, any adverse treatment that he alleged was based on his classification, including the allegation that prison officials labeled him a terrorist. Based on his

testimony, plaintiff indicates that the treatment by defendants was based on his classification by the officials at FCI-Milan. Despite his objection to this label, defendants were reasonable to rely on his classification and to make security decisions accordingly. Plaintiff fails to state a claim under the Equal Protection Clause.

## IV.    Conclusion.

For the foregoing reasons, plaintiff's claims of retaliation against Warden Dan Joslin and Captain Joseph Higgerson are retained. Similarly, plaintiff's First Amendment claim against defendant Joslin concerning the uncuffing of his pants is retained. Plaintiff's remaining causes of action are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

ORDERED this 12th day of February 2008.

                                                BRIAN L. OWSLEY
                                                UNITED STATES MAGISTRATE JUDGE