IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AHMAD JEBRIL | § | |
|     FED. REG. I.D. 31943-039 | § | |
| v. | § | C.A. NO. C-07-436 |
| | § | |
| DAN JOSLIN, ET AL. | § | |

### ORDER DENYING PLAINTIFF'S MOTION
### FOR INJUNCTIVE RELIEF AND FOR APPOINTMENT OF COUNSEL

Plaintiff is a federal inmate currently incarcerated at the Federal Correctional Institution ("FCI") in Three Rivers, Texas.  Proceeding pro se, he filed a civil rights action pursuant to Bivens.[1]  (D.E. 1).  Pending is his motion for a preliminary injunction, and for appointment of counsel.  (D.E. 36).

## I.  JURISDICTION

Jurisdiction in this action is based on a federal question pursuant to 28 U.S.C. § 1331.  Upon consent of the plaintiff, (D.E. 20), the case was referred to the undersigned United States magistrate judge for all further proceedings, including entry of final judgment.  (D.E. 21); see also 28 U.S.C. § 636(c).

## II.  PROCEDURAL HISTORY

On November 8, 2007, plaintiff filed this action raising civil rights claims against prison officials at FCI-Three Rivers, and at FCI-Milan in Michigan.  (D.E. 1).  A Spears[2] hearing was

---

[1]  This action was originally docketed as a habeas petition pursuant to 28 U.S.C. § 2241. On December 21, 2007, plaintiff filed a motion to amend his complaint to proceed pursuant to Bivens instead.  (D.E. 15).  On December 26, 2007, this motion was granted.  (D.E. 17).

[2]  Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

conducted on January 9, 2008.  On February 12, 2008, the Court retained certain claims, (D.E. 24), and ordered service on defendants.  (D.E. 25).  On May 20, 2008, defendants filed a motion to dismiss, (D.E. 43), and an answer.  (D.E. 45).

On May 2, 2008, plaintiff filed this motion for a preliminary injunction, and for appointment of counsel.  (D.E. 36).  He petitions the Court to "stop the escalated retaliatory tactics used by the Three Rivers - FCI administration and staff in retaliation for me filing this case against them."  Id. at 1.  Specifically, he alleges that officers refuse to let him send legal mail, interfere with his mail, and delay his e-mails.  Id. at 1-2.  He also alleges that Captain Higgerson ordered other officers and staff to harass him and inmates with whom he associates.  Id. at 3.  Finally, he explains that he was recently denied Muslim fare for approximately two weeks while FCI-Three Rivers was locked down after a riot on March 28, 2008.  Id. at 3-4.  He seeks an injunction requiring defendants to continue his special Muslim diet.  Id. at 4.

Plaintiff additionally requests relief unrelated to defendants' allegedly retaliatory actions.  He seeks an injunction requiring the Bureau of Prisons ("BOP") to calculate his custody level without an "unjustified management variable" and transfer him to a lower-security institution.  Id. at 3-4.  He also asks the Court to enter an injunction requiring defendants to allow him to enter the cafeteria with his pants above the ankle.  Id. at 4.  Plaintiff renews his requests for counsel as well,[3] arguing that the inadequate law library and his difficulties with the prison mail system constitute exceptional circumstances that justify an appointment.  Id. at 1-2.

On May 20, 2008, defendants filed a response in opposition.  (D.E. 44).  They argue that

---

[3] Plaintiff filed motions for appointment of counsel on November 8, 2007, (D.E. 2), and March 17, 2008.  (D.E. 30).  These were both denied.  (D.E. 3, 31).

the Court cannot grant the motion because there is no jurisdiction to consider the underlying claims.[4] Id. at 2.  They further contend that "a motion for a preliminary injunctions [sic] is not the appropriate vehicle" to request appointment of counsel.  Id. at 5.  Finally, they argue that plaintiff is not entitled to injunctive relief because he does not face a substantial threat of irreparable harm.  Id. at 3-5.

### III.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

To obtain a preliminary injunction or temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure, the applicant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest."  Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999) (per curiam) (citation omitted); accord Libertarian Party of Tex. v. Fainter, 741 F.2d 728, 729 (5th Cir. 1984) (per curiam) (citation omitted); see also Parker v. Ryan, 960 F.2d 543, 545 (5th Cir. 1992) ("the requirements of rule 65 apply to all injunctions").  Injunctive relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance.  See Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1050 (5th Cir. 1997) (citation omitted).  Failure to establish any of the four elements will result in the motion for injunctive relief being denied.  Guy Carpenter & Co. v. Provenzale, 334 F.3d 459, 464 (5th Cir. 2003) (citation

---

[4] Defendants claim to argue the exhaustion issue separately in their motion to dismiss. (D.E. 43, at 2).  Because they relied on material outside the pleadings, their motion to dismiss was converted into a motion for summary judgment on May 27, 2008.  (D.E. 48).  This motion is not ripe so the exhaustion issue has not yet been decided.  Moreover, the motion does not address jurisdiction.  See (D.E. 43).  Accordingly, this argument will not be considered here.

omitted).

**A.      Plaintiff Does Not Establish A Substantial Likelihood Of Success On The Merits.**

      **1.      Plaintiff's Retaliation Claims.**

Plaintiff claims that defendants retaliated against him for filing this lawsuit.  (D.E. 36, at 1).  To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory act, and (4) causation.  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).  The inmate must be able to point to a specific constitutional right that has been violated.  Id. at 325.  An inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted).  Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006).  The retaliatory actions need not be a per se violation of a plaintiff's constitutional rights.  See Woods, 60 F.3d at 1165 ("An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.") (citations omitted).  Some acts, however, are so de minimis that they cannot form the basis of a civil rights claim even when motivated by

4

retaliatory intent.  Morris, 449 F.3d at 686.  An act is de minimis where it would not deter the ordinary person from further exercise of his rights.  For example, a "single incident, involving a minor sanction," is de minimis, while a transfer to a more dangerous unit might constitute a sufficiently adverse retaliatory act.  Id. at 685, 687 (citations omitted).

There is no question that prisoners have a right to file lawsuits against prison officials, or that plaintiff did so.  It is assumed for purposes of his pending motion that he has also alleged a chronology sufficient to support an inference of retaliatory intent.  See Peters v. Quarterman, No. 05-20540, 2007 WL 3230333, at *1 (5th Cir. Oct. 31, 2007) (per curiam) (unpublished) (retaliation may be inferred from the exercise of the protected right followed by an adverse act) (citing Woods, 60 F.3d at 1164; Gibbs v. King, 779 F.2d 1040, 1042 (5th Cir. 1986); Ruiz v. Estelle, 679 F.2d 1115, 1153-55 (5th Cir. 1982)).  Nonetheless, plaintiff has failed to sufficiently allege that defendants inflicted any injury greater than de minimis, and that his lawsuit caused any of defendants' acts.

Plaintiff has not alleged acts severe enough to constitute actionable retaliation.  He claims that, on February 4, 2008, the officer in charge of outgoing legal mail refused to let him into the mail room.  (D.E. 36, at 1).  An hour later, plaintiff tried again, with similar results.  Id. Immediately afterward, plaintiff followed another inmate into the mail room and was admitted. Id.  Although he alleges that officers repeatedly interfere with his mail service, he does not describe any other incident.  Without more, he does not establish greater than de minimis retaliation.[5]  Similarly, his allegations that legal mail "has never reached [him] in less than 8

---

[5] Plaintiff has a Master of Laws degree from Wayne State University.  (D.E. 8, Ex. 2, at 1).  As the Tenth Circuit has explained, it "requires no special legal training to recount the facts surrounding [a pro se plaintiff's] injury."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.

days from postage mark date," and that his e-mail is frequently delayed, would not show more than de minimis retaliation if proven.  See Islam v. Goord, No. 05 Civ. 7502, 2006 WL 2819651, at * 7-8 (S.D.N.Y. Sept. 29, 2006) (unpublished).

The acts of harassment alleged also fail to establish the requisite injury.  Captain Higgerson ordered plaintiff searched on one occasion.  Id. at 3.  Although he alleges that "this is one of many incidents to show that the harassment intensified," he does not describe any other incident.  Similarly, he alleges that inmates who associate with him are often harassed. However, he describes only a single occasion on which an officer "began to mimic an inmate walking with me saying my name," alleges that the same inmate was subjected to an alcohol test several days before, and notes that officers keep track of inmates who walk with him.  Id. Without more, it cannot be concluded that these acts caused any significant injury.

Plaintiff's claim that he was denied common fare[6] for more than two weeks while FCI-Three Rivers was locked down is very troubling.  See (D.E. 36, at 4) ("During lockdown I needed my religious diet (common fare)").  Indeed, it seems likely that plaintiff could allege additional facts that would clearly show a sufficiently adverse act.  However, it is inappropriate to simply assume their existence.

Plaintiff describes his situation in an un-submitted BP-A148.055 "Inmate Request to

_____

1991).  As a trained lawyer, plaintiff can reasonably be expected to allege specific facts in support of his claim.

[6] "Common fare" refers to the BOP's meal plan for inmates with religious dietary limitations.  Common fare meals are prepared, stored, and served in accordance with the requirements of Orthodox Judaism, as these techniques are acceptable for almost every faith. This contrasts with the "main line" plan, which includes vegetarian and non-pork options.  See Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 810-11 (8th Cir. 2008).

Staff" form, dated April 9, 2008, attached to his motion for a preliminary injunction.  (D.E. 36, at 7).  On this form, which is directed to Chaplain Rabb, he demands to be on common fare during lockdown.  Id.  He had apparently been denied religious meals since the prison was locked down following a riot on March 28, 2008.  Id. at 7 ("I've been getting the run around on this since 1st day of lockdown").  He explains that, during lockdown, he must rely solely on the prison's meal service for food.  Id.  He recounts that, earlier the same day, Chaplain Rabb told him "I got to make calls [because] of what you did since Nov[ember]" in response to his request.  Id.  Plaintiff alleges that Chaplain Rabb then spoke to defendant Higgerson, his superior.  Id. at 4.  When he returned, he told plaintiff that "I've been ordered to tell you to write a cop-out to Chaplain."  Id.  Plaintiff then asked the chaplain to "wait [one] minute [because] cop-outs take days to get to you."  Id.  Chaplain Rabb refused to wait.  Id.

    Plaintiff has not provided sufficient evidence to determine the degree to which his right to file a lawsuit has been burdened by being forced to choose between eating or observing his religion.  Plaintiff does not describe the dietary limitations his sincerely held beliefs require he observe.  He likewise fails to describe the meals he received while on lockdown.  However, to be on the common fare plan, an inmate must submit a request explaining why his faith requires it, and obtain approval.  28 C.F.R. § 548.20(a); see also Resnick v. Adams, 348 F.3d 763, 765 (9th Cir. 2003).  It therefore seems likely that plaintiff's sincerely held beliefs preclude him from eating at least some mainline fare regularly served.  Thus, offering him only regular mainline meals could have deprived him of a significant portion of his daily caloric intake over a period of approximately two weeks.  Forcing an inmate to face the prospect of either slow starvation, or contamination by unclean food, in turn, would be a more than de minimis adverse act, as it could

7

deter a person of ordinary firmness from prosecuting a lawsuit.  <u>See</u> (D.E. 36, at 4) (allegations to that effect).

However, plaintiff's allegations are simply too skeletal to conclude that he faced this choice.  His general allegation that he "needed" a religious diet and did not get one does not establish that he was actually deprived a significant amount of food, or forced to act in a manner inconsistent with his religion.  <u>See</u> <u>Norwood v. Strada</u>, 249 Fed. Appx. 269, 270-71 (3d Cir. 2007) (per curiam) (unpublished).  It is possible that he received "satellite meal service" during lockdown, which means simply that a standard menu was served to him in his cell.  <u>See</u> Bureau of Prisons, Policy Statement 4700.05, Chapter 6, at 1 (June 12, 2006), <u>available</u> <u>at</u> http://www.bop.gov/DataSource/execute/dsPolicyLoc.  If so, plaintiff should have had the opportunity to select a no-pork or no-flesh meal.  <u>Id.</u>  As the prison was locked down, he may have also been served a sack meal.  <u>Id.</u>  This meal is supposed to consist of, at the minimum, "one non-pork meat sandwich, one no-flesh sandwich, one portion of fruit, and one beverage." <u>Id.</u>  Based on the record presented with this pending motion, it would be speculative to determine whether these options were available, or whether plaintiff's sincerely held beliefs rendered this a greater than <u>de</u> <u>minimis</u> adverse act.

Indeed, plaintiff does not allege that he missed even one meal.  <u>See</u>, <u>e.g.</u>, <u>Omar v.</u> <u>Casterline</u>, 414 F. Supp.2d 582, 593 (W.D. La. 2006) (serving meals before sunset for two of four days of Ramadan is <u>de</u> <u>minimis</u>); <u>Baskin v. Murphy</u>, No. 1:04-CV-324, 2007 WL 1192313, at *4 (E.D. Tex. Apr. 23, 2007) (unpublished) (being denied ability to attend one meal during Ramadan does not amount to a constitutional violation); <u>Talib v. Gilley</u>, 138 F.3d 211, 214 n.3 (5th Cir. 1998)).  Thus, he has not satisfied his burden of showing a substantial likelihood that

being deprived common fare causes him a greater than de minimis injury.  Compare Beerheide v. Zavaras, 997 F. Supp. 1405, 1410 (D. Colo. 1998) (granting injunctive relief where plaintiff showed that his sincerely held Orthodox Jewish beliefs not only prohibited certain foods, but also required specific preparation, storage, and serving techniques for all foods), aff'd Beerheide v. Suthers, 286 F.3d 1179 (10th Cir. 2002).

Finally, plaintiff does not explain why his filing this lawsuit is a but-for cause of any of defendants' acts.  He must show that, absent this lawsuit, the complained-of adverse acts would not have occurred.  Lentworth v. Potter, 255 Fed. Appx. 903, 905 (5th Cir. 2007) (per curiam) (unpublished) (citing Jones, 188 F.3d at 324-25.  Although he alleges generally that the facts alleged "clearly show what was done was because of my lawsuit," (D.E. 36, at 5), he was being closely watched before the suit was filed, and was not allowed to wear his pants cuffed. Moreover, he does not show why his problems with the mail and with his religious diet could not have been caused by non-retaliatory factors - e.g. his security classification, or the riot itself. Accordingly, he fails to establish all of the elements of a successful retaliation claim, and cannot demonstrate the likelihood of success necessary for an injunction to issue.

**2.      Plaintiff's Other Claims.**

Plaintiff alleges that defendants interfered with his access to the courts by monitoring and delaying his legal mail, and by maintaining an inadequate law library.  Prisoners have a constitutionally protected right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 350 (1996) (citing Bounds v. Smith, 430 U.S. 817 (1977)).  The State must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in

9

the law" or other persons who can provide legal assistance.  <u>Bounds</u>, 430 U.S. at 824-28.

However, prison officials have considerable discretion in providing legal resources to prisoners.

<u>Lewis</u>, 518 U.S. at 356; <u>see</u> <u>also</u> <u>Jones</u>, 188 F.3d at 325 (citations omitted) (the right provides a

reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of

confinement).

Because the right of access is not a "freestanding right," the plaintiff must demonstrate

actual injury resulting from an alleged denial of access to the courts.  <u>Lewis</u>, 518 U.S. 351;

<u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999) (per curiam).  To establish the requisite

actual injury, plaintiff must show that he lost an actionable claim, or was prevented from

presenting such a claim because of the alleged denial.  <u>See</u> <u>Lewis</u>, 518 U.S. at 356; <u>see</u> <u>also</u>

<u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002).  A prisoner's rights are not violated just

because legal mail is opened and searched for contraband outside of his presence.  <u>Brewer v.</u>

<u>Wilkinson</u>, 3 F.3d 816, 825 (5th Cir. 1993).

Plaintiff does not allege that his position as a litigant has been prejudiced, that his mail

has been censored, or that his "ability to prepare or transmit a necessary legal document has been

affected."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Sanders v. Carnley</u>, 100 Fed. Appx. 236, 237 (5th Cir. 2004) (per curiam)

(unpublished).  Moreover, his conclusory allegation that the law library is inadequate does not

sufficiently establish that he was denied a reasonable opportunity to file a nonfrivolous claim.

Accordingly, he does not show that his access to the courts claim is likely to succeed.

Plaintiff does not establish an independent right to even access a computer, much less use

e-mail.  Research suggests there is no such right.  <u>See</u> <u>Lehn v. Hartwig</u>, 13 Fed. Appx. 389, 392

(7th Cir. 2001) (order) (unpublished); <u>Moore v. Palacios</u>, No. C-03-330, 2008 WL 177706, at *1

10

(S.D. Tex. Jan 17, 2008) (unpublished); see also Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 130-31 (1977) (where restrictions on bulk mailing deprived inmates of its "cheaper rates and convenience," rights not violated because "other avenues of outside informational flow ... remain available"); Byrd v. L.C.S. Corr. Servs. Inc., No. 07-0029, 2007 WL 2156583, at *16 n.2 (E.D. La. Apr. 27, 2007) (unpublished) ("plaintiff's claim that he has (or will be) denied use of computers or access to printers does not state a viable access to courts claim").  Accordingly, this claim is not likely to succeed on the merits.

Plaintiff also alleges never receiving certain legal and personal mail.  He explains that

> I have also been recieving [sic] both legal and personal mail
> opened and sometimes empty.
> On 1/24/08 I got a letter opened and stapled as they usually are
> given to us from the mail room, when I checked the letter was
> empty.
> I informed the officer and he said to talk to R & D.  Several
> inmates stading [sic] near us seen it.
> I also recieved [sic] some legal mail in the same kind of way

(D.E. 36, at 2).  He does not inform the Court whether "R&D" ever returned the letter. Similarly, his general allegation that "[m]ost of the mail my family send [sic] me I do not receive," id., without more, does not establish a constitutional violation.  Moreover, merely alleging that he has "kept many of the envelopes as proof and documented when I received them" is not the equivalent of actually providing evidence of a continuing pattern or practice of interference with his mail.

Plaintiff's claim would also fail because he does not allege personal involvement by either defendant.  Section 1983 does not create supervisory, or respondeat superior liability. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Only the direct acts or omissions of

government officials, not the acts of subordinates, will give rise to individual liability under § 1983, or <u>Bivens</u>.  <u>Id.</u> at 742 n.6 (citing <u>Alton v. Tex. A&M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999)); <u>Abate v. South Pac. Transp. Co.</u>, 993 F.2d 107, 111 (5th Cir. 1993).  Supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause the constitutional deprivation or (2) implement unconstitutional policies that causally result in plaintiff's injury.  <u>Oliver</u>, 276 F.3d at 742; <u>Thompkins v. Belt</u>, 828 F.2d 298, 303-04 (5th Cir. 1997).

Plaintiff does not explain how the defendants caused his "mail issues," and thus has not established that he could prevail on this claim.  Moreover, the lack of personal involvement means that the requested injunction would be directed in part at persons who are not parties to this action, and over whom the Court lacks jurisdiction in this action.  <u>See</u> Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."); <u>see</u> <u>also</u> <u>Parker</u>, 960 F.2d at 545 ("'adverse party' means the party adversely affected by the injunction, not the opponent in the underlying action").  Thus, this claim is not likely to succeed on the merits.

Plaintiff claims that BOP regulations forbidding pants hemmed above the ankle violate his religious freedoms.  Prison administrators must provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972).  Restrictions on that exercise must be reasonably related to legitimate penological interests. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 345-46 (1987); <u>Turner v. Safley</u>, 482 U.S. 78, 89-90 (1987); <u>Green v. Polunsky</u>, 229 F.3d 486, 489 (5th Cir. 2000).  In <u>Turner</u>, the Supreme Court established a four-factor "rational

12

relationship" test for analyzing the constitutionality of regulations that burden a prisoner's

fundamental rights.  482 U.S. at 89-91.  Under the <u>Turner</u> test, the court must consider:

(1) whether there exists a valid, rational correlation between the prison regulation and the

legitimate governmental interest advanced; (2) whether there are alternative means of exercising

the rights that remain available to the inmates; (3) what is the impact on prison staff, other

inmates, and the allocation of prison resources generally; and (4) whether there is an absence of

ready alternatives to the regulation in question.  <u>Id.</u>

Moreover, the Religious Land Use and Institutionalized Persons Act ("RLUIPA")

provides that no government shall impose a substantial burden on the religious exercise of a

person residing in or confined to an institution even if the burden results from a rule of general

applicability, unless the government demonstrates that the imposition of the burden on that

person is in furtherance of a compelling governmental interest and is the least restrictive means

of furthering that compelling interest.  42 U.S.C. § 2000cc.  RLUIPA imposes the strict scrutiny

test on prison regulations; however, the courts are to apply that standard with "due deference to

the experience and expertise of prison and jail administrators in establishing necessary

regulations and procedures to maintain good order, security and discipline, consistent with

consideration of costs and limited resources."  <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723 (2005)

(citation omitted).  Prison security, in and of itself, is a compelling state interest, and deference is

due to institutional officials' expertise in this area.  <u>Id.</u> at 724 n.13.  RLUIPA does not elevate

accommodation of religious observances over a prison's need to maintain order and safety, and

any accommodation must be measured so that it does not override other significant interests.  <u>Id.</u>

at 722.  A prison is free to resist requests for religious accommodations that either impose

unjustified burdens on other prisoners, or jeopardize the effective functioning of a prison.  Id. at 726.

In analyzing the notion of "substantial burden" applied to RLUIPA, the Fifth Circuit has explained that "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). It further elaborated that "the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs."  Id.

The Court has retained this claim, but has not yet determined whether the BOP regulations forbidding cuffed pants violate plaintiff's constitutional rights.  See (D.E. 24, at 11). To obtain a preliminary injunction, plaintiff bears the burden of showing that this claim will likely succeed.  Plaintiff does not argue the merits of this claim, and thus fails to show it is likely to succeed.  Similarly, for reasons discussed in the preceding subsection, he has failed to make the necessary showing with respect to his meal-related claims.

Plaintiff's allegations of harassment do not show that defendants violated any constitutional right.  He claims that Captain Higgerson directed staff to search him.  Prisoners have a right to be free of unreasonable searches.  Moore v. Carwell, 168 F.3d 234, 237 (5th Cir. 1999) (citing United States v. Lilly, 576 F.2d 1240, 1244 (5th Cir. 1978)).  However, the burden of proving reasonableness is light because of the deference afforded prison administrators.  Elliot v. Lynn, 38 F.3d 188, 191 (5th Cir. 1994).  Probable cause is not required.  Lilly, 576 F.2d at

14

1244.  This analysis strikes a "balance in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner."  Watt v. City of Richardson Police Dep't, 849 F.2d 195, 196 (5th Cir. 1988).  Plaintiff simply does not allege facts suggesting that the search was unreasonable, or that his interests were intruded upon.[7]

Plaintiff also claims that guards harass inmates he associates with.  Specifically, he alleges that one guard mimicked an inmate walking with him, and that officers routinely keep track of inmates seen with him.  To the extent he complains of comments directed at him or other inmates, he fails to state a claim.  Verbal abuse by correctional officers, no matter how extreme, is not actionable.  See Brender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

Similarly, keeping a record of inmates with whom plaintiff associates violates no protected right.  He appears to claim that defendants' harassment has a chilling effect on the exercise of his rights.  The Fifth Circuit has explained that the right of association includes: (1) "the choice to enter into and maintain certain intimate human relationships," and (2) the "right to associate for the purpose of engaging in expressive activities protected by the First Amendment."  Wallace v. Texas Tech Univ., 80 F.3d 1042, 1051 (5th Cir. 1996) (citing City of Dallas v. Stanglin, 490 U.S. 19, 22-24 (1989)).  He does not allege expressive activity, so the second right is not implicated.  As for the first, while the right to "social association is not limited to family relationships," it is typically "limited to relationships 'that presuppose deep 'attachments and commitments to the necessarily few individuals with whom one shares not only

_____

[7] Plaintiff alleges generally a "hostile vigorous body search," but provides no supporting details.  (D.E. 36, at 3).

15

a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life.'" Id., 80 F.3d at 1051-52 (citing Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987)).  He has not alleged the existence of such an intimate relationship with any fellow inmate.  See Roberts v. United States Jaycees, 468 U.S. 609, 620 (1984) (determining whether a relationship is protected "unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments") (citation omitted).

Moreover, the right of association is curtailed while an individual is incarcerated.  The Supreme Court has held that

> a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

Pell v. Procunier, 417 U.S. 817, 822 (1974).  Even assuming that personal friendships are within the scope of the First Amendment, the scope of the right may be restricted "whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment."  Jones, 433 U.S. at 132.

Plaintiff bears the burden of showing that prison officials have made an error in

judgment.  Judicial notice is taken that plaintiff was convicted for various acts of fraud.[8]  Some of the crimes for which he was convicted could be perpetrated behind prison walls.  Just as defendants may reasonably rely on a classification decision made by FCI-Milan, <u>see</u> (D.E. 24, at 9), they may reasonably rely on these convictions in deciding to monitor him closely.  Thus, it was not unreasonable that defendant Higgerson was suspicious of plaintiff's contact with an inmate about to leave FCI-Three Rivers.  Accordingly, he fails to show that he is likely to succeed on his harassment claims.

He also asks that he be transferred to a lower-security prison.  It is well established that an inmate does not have a constitutional right to be housed in a specific prison.  <u>Olim v. Wakinekona</u>, 461 U.S. 238, 244-46 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976); <u>Tighe v. Wall</u>, 100 F.3d 41, 42 (5th Cir. 1996) (per curiam).  Indeed, his claim that he should not be housed at FCI-Three Rivers has already been dismissed from this action.  <u>See</u> (D.E. 24, at 9-10).  Plaintiff thus fails to establish a substantial likelihood of success on any of his claims.

---

[8] In <u>United States v. Ahmad Musa Jebril</u>, No. 03-CR-80810-1 (E.D. Mich.), a jury found plaintiff guilty of bank fraud, wire fraud, mail fraud, fraudulent use of a social security number, conspiracy, and possessing a firearm after a felony conviction.  <u>See</u> <u>id.</u>, at Docket Entry # 107. On December 12, 2005, the District Judge sentenced him to two 60-month sentences, thirty-two 70-month sentences, and eight 12-month sentences, served concurrently, followed by three years of supervised release.  <u>Id.</u> at 3, 5.  The Michigan court imposed a special condition of supervision that "defendant shall not incur any new credit charges of open additional lines of credit without the approval of the probation officer."  <u>Id.</u> at 6.  He was additionally ordered to make restitution of $250,766.51.  <u>Id.</u> at Docket Entry # 122.

In <u>United States v. Jebril</u>, No. 05-CR-80175-2, plaintiff pleaded guilty to aiding and abetting the bribery of a public official, while on release from federal prison.  <u>Id.</u>, at Docket Entry # 69.  On February 28, 2007, the district judge sentenced him to one 47-month and one 30-month term of imprisonment, followed by a two-year term of supervised release.  <u>Id.</u> at 2.

**B.     Plaintiff Cannot Establish A Substantial Threat That He Will Suffer Irreparable Injury If The Injunction Is Denied.**

For an injunction to issue, "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985) (citation omitted).  An "actual injury" must be certain to occur. See Chriceol, 169 F.3d at 317 (addressing "actual injury") (citing Lewis, 518 U.S. at 351-54); see also United States v. Emerson, 270 F.3d 203, 262 (5th Cir. 2003) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. *A presently existing actual threat must be shown*.  However, ... *a strong threat* of irreparable injury before trial is an adequate basis.") (emphases in original) (citation omitted).  Federal courts have repeatedly recognized that a constitutional violation "constitutes irreparable injury as a matter of law." Springtree Apts., ALPIC v. Livingston Parish Council, 207 F. Supp.2d 507, 515 (M.D. La. 2001) (citing Elrod v. Burns, 427 U.S. 347 (1976)); see also 11A Wright, Miller, & Kane, Federal Practice and Procedure, § 2948 (1973).

Plaintiff has not shown a substantial threat of irreparable injury.  He fails to allege facts from which a continuing pattern of interference with his mail or e-mail could be inferred.  He also fails to show any serious injury.  Moreover, even if he could show that he were substantially likely to miss a legal deadline because of interference with the mail, he could seek the Court's discretion to "repair" the injury by accepting an out-of-time filing.

Plaintiff similarly fails to make the required showing with respect to his religious freedom claims.  He does not allege that restrictions on pants length cause any injury apart from violating his constitutional rights.  As explained in the previous subsection, he has not

18

sufficiently shown that his First Amendment rights have been violated for this to constitute an irreparable injury per se. Instead, his allegations regarding the denial of common fare concern past actions. As for his diet, he does not allege that defendants are currently denying him common fare, or that they are likely to do so in the future. Moreover, he has not shown that denying him common fare violates his constitutional rights. Finally, the alleged harassment still consists of "numerous incidences of inconvenience" that do not amount to serious harm. See (D.E. 24, at 12). Accordingly, plaintiff has failed to make the requisite showing that he faces any substantial threat of irreparable harm.

**C.      Plaintiff Cannot Establish That The Threatened Injury To Himself Outweighs The Harm The Injunction Would Cause Defendants.**

Plaintiff has not established that any serious injury is substantially likely to occur.

On the other hand, if the injunctive relief that plaintiff seeks were granted, then the TDCJ-CID would be required to take actions based on plaintiff's individual preferences instead of institutional concerns about safety and efficient management of the McConnell Unit. See Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003) ("Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order.") (citation omitted); see also 18 U.S.C. § 3626(a)(2) (when considering a preliminary injunction, a "court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief"). Accordingly, plaintiff cannot establish that the threatened harm outweighs the harm to defendants.

**D.      Granting Plaintiff's Motion Will Not Serve The Public Interest.**

The Fifth Circuit has explained that federal courts "are not to micromanage state

prisons." Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (citing Bell v. Wolfish, 441 U.S.

520, 562 (1979)).  Here, plaintiff requests that this Court engage in such micromanagement by

monitoring his mail service, actions by officers and staff, and by transferring him to another

prison.

The public has an interest in prisons that are run securely, safely, and efficiently while

adhering to constitutional standards.  The Fifth Circuit has explained that "'courts are ill-

equipped to deal with the increasingly urgent problems of prison administration ...,' ...and that it

is not 'wise ... to second-guess the expert (or any other) administrators on matters on which they

are better informed.'" Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (citations

omitted).

Plaintiff does not offer any evidence or argument that his requests would serve the public

interest.  He has thus failed to establish that granting his injunctive relief will not disserve the

public interest.  Accordingly, his motion for a preliminary injunction is DENIED.

## IV.  PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

No constitutional right to appointment of counsel exists in civil rights cases.  See

Baranowski v. Hart, 486 F.3d 112, 126 (5th Cir. 2007); Akasike v. Fitzpatrick, 26 F.3d 510, 512

(5th Cir. 1994) (per curiam).  A district court is not required to appoint counsel unless

"'exceptional circumstances'" exist.  Cupit v. Jones, 835 F.2d 82, 86 (5th Cir. 1987) (quoting

Jackson v. Dallas Police Dep't, 811 F.2d 260, 261 (5th Cir. 1986) (per curiam)).  Among the

factors that should be considered are: "(1) the type and complexity of the case; (2) whether the

indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence.  The court should also consider whether appointed counsel would aid in the efficient and equitable disposition of the case." Jackson, 811 F.2d at 262 (citing Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982)); accord Norton v. Dimanza, 122 F.3d 286, 293 (5th Cir. 1997).

Upon careful consideration of the factors set forth in Jackson, it is determined that appointment of counsel is not warranted at this time.  Regarding the first factor, plaintiff's freedom of religion and retaliation claims do not present any complexities that are unusual in prisoner actions.  The second and third factors are whether the plaintiff is in a position to adequately investigate and present his case.  Plaintiff, who has a law degree from an accredited American law school, has thus far demonstrated that he is able to adequately communicate and file pleadings with the Court.  The fourth factor requires an examination of whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence.  Plaintiff's action has not been scheduled for trial; consequently, at this time, the appointment of counsel for trial would be premature.  Finally, there is no indication that appointing counsel would aid in the efficient and equitable disposition of the case.

No "exceptional circumstances" exist that warrant the appointment of counsel at this time.[9]  Accordingly, plaintiff's motion for appointment of counsel is DENIED without prejudice,

---

[9] Appointment of counsel is not the proper remedy for mail tampering.  If plaintiff believes his constitutional rights are being violated, then he should file a separate lawsuit against the individuals he alleges are denying his rights.

21

subject to renewal should counsel be warranted at a later date.

## V.  CONCLUSION

Based on the foregoing reasons, plaintiff's motion for a preliminary injunction and for appointment of counsel, (D.E. 36), is DENIED.

Ordered this 18th day of June 2008.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE